[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 897 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 898 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 899 
J.B. Hubbard appeals from the denial of his petition seeking post-conviction relief under Rule 20, Alabama Temporary Rules of Criminal Procedure. The petition was denied by the trial court after a full evidentiary hearing, during which the appellant was represented by counsel.
The appellant was convicted of capital murder and was sentenced to death.[1] This court affirmed the conviction inHubbard v. State, 500 So.2d 1204 (Ala.Crim.App. 1986). This court's judgment was affirmed in Ex parte Hubbard,500 So.2d 1231 (Ala. 1986). The United States Supreme Court denied certiorari in Hubbard v. Alabama, 480 U.S. 940, 107 S.Ct. 1591,94 L.Ed.2d 780 (1987). Hubbard filed this petition seeking post-conviction relief in the Tuscaloosa County Circuit Court. He raised some 32 issues in the petition, some of which contain multiple subparts. After an evidentiary hearing, the trial court made express written findings of fact and conclusions of law. These findings and conclusions are adopted as Appendix A to this opinion and are approved unless otherwise noted in our footnotes to Appendix A.
Several of Hubbard's claims are procedurally barred because they were (1) raised and addressed on direct appeal inHubbard v. State, 500 So.2d 1204 (Ala.Crim.App.), aff'd,500 So.2d 1231 (Ala. 1986), see Ex parte Clisby, 501 So.2d 483
(Ala. 1986); Baldwin v. State, 539 So.2d 1103
(Ala.Crim.App. 1988), cert. denied, 493 U.S. 874, 110 S.Ct. 206,107 L.Ed.2d 159 (1989); (2) could have been raised at trial and on direct appeal but were not, see Clisby; Baldwin; or (3) not raised in the Rule 20 proceeding. See, e.g., Bell v. State,518 So.2d 840 (Ala.Crim.App. 1987), cert. denied, 486 U.S. 1036,108 S.Ct. 2024, 100 L.Ed.2d 611 (1988); Jackson v. State,501 So.2d 542 (Ala.Crim.App. 1986); cert. denied, 483 U.S. 1010,107 S.Ct. 3242, 97 L.Ed.2d 746 (1987). We completely adhere *Page 900 
to the views heretofore expressed in the opinion of this court on original appeal of this conviction. We will address four of the appellant's claims below.
 I
We have carefully considered the appellant's assertions with reference to his representation by counsel. We conclude that he failed, both as to trial and as to the original appeal, to show either inadequate or ineffective representation by counsel. In order to prove ineffective assistance of counsel,
 "[f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."
Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052,2064, 80 L.Ed.2d 674, 693 (1984). The appellant failed to satisfy either prong of this test. As duly noted by the trial court, in Hubbard v. State, 500 So.2d at 1227, this court stated, "It is our opinion that appellant received a fair trial and was ably represented throughout the proceedings." A review of the record leads us to the conclusion that the trial court's findings of fact and conclusions of law are correct and are fully supported by the record. We also note that the appellant was also fully and fairly represented at the Rule 20 petition hearing and in his appeal of that proceeding which is presently before this court.
 II
The appellant contends that the trial court's judgment on the Rule 20 petition is due to be reversed because the trial court's order is a carbon copy of the proposed order submitted by the prosecution. A review of the record reveals that although the trial court's order is substantially similar to the proposed order, there are some differences. Furthermore, the trial court clearly stated that it spent two full days fashioning its own order even though it adopted many of the State's proposed findings. (R. 593).
"[E]ven when the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous." Anderson v. Bessemer City,North Carolina, 470 U.S. 564, 572, 105 S.Ct. 1504, 1511,84 L.Ed.2d 518, 527 (1985). See also United States v. El PasoNatural Gas Co., 376 U.S. 651, 84 S.Ct. 1044, 12 L.Ed.2d 12
(1964) (verbatim findings are not to be summarily rejected and will stand if supported by the evidence); Weeks v. State,568 So.2d 864 (Ala.Crim.App. 1989), cert. denied, Weeks v.Alabama, ___ U.S. ___, 111 S.Ct. 230, 112 L.Ed.2d 184 (1990) (issue discussed in dicta); Morrison v. State,551 So.2d 435 (Ala.Crim.App. 1989), cert. denied, ___ U.S. ___,110 S.Ct. 1938, 109 L.Ed.2d 301 (1990) (trial court's findings of fact and conclusions of law were not clearly erroneous and adoption of findings and conclusions was proper). Under the circumstances of this case, we see no reason to doubt that the findings of fact and conclusions of law, with which we agree, represent the judge's independent judgment and own considered conclusions.
 III
The appellant next contends that the trial court erred in denying his request for State funds to hire experts to testify at the Rule 20 hearing. The appellant sought to hire a psychiatrist, toxicologists and experts in police procedure. We find that the appellant received a full and fair hearing. The evidence the appellant sought to introduce through these experts was either already before the court in another form or was not necessary to the court's determination. Furthermore, the fundamental fairness mandated by the Due Process Clause does not require the trial court to approve *Page 901 
such funds. See generally, Murray v. Giarratano, 492 U.S. 1,109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) (no requirement that indigent defendants be appointed counsel in post-conviction proceedings); Pennsylvania v. Finley, 481 U.S. 551,107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) (same); Ex parte Cox, 451 So.2d 235
(Ala. 1983) (same); Hobson v. State, 425 So.2d 511
(Ala.Crim.App. 1982) (same). The appellant has failed to show how the denial of the request prejudiced his case in any way.
 IV
The appellant next contends that he was denied a full and fair coram nobis proceeding because the trial court effectively refused to permit an expert to testify as to ineffective assistance of counsel because he refused to approve an expert witness fee. This argument has no merit, because the appellant has failed to demonstrate that the denial of funds prejudiced his case in any way. Expert testimony is not required for an ineffective assistance of counsel determination. Furthermore, because there is no merit to any of the appellant's ineffective assistance of counsel claims, he certainly was not prejudiced by the trial court's ruling.
We have carefully reviewed the allegations and legal arguments in support of this appeal and find no error. For the reasons stated herein, the judgment of the Tuscaloosa County Circuit Court denying the appellant's Rule 20 petition is due to be, and it hereby is, affirmed.
AFFIRMED.
All the Judges concur.
 APPENDIX A In the Circuit Court of Tuscaloosa County, Alabama
Case No. CC77-180.60
Oct. 18, 1990.
J.B. Hubbard, Petitioner,
vs
State of Alabama, Respondent.
 ORDER ON CORAM NOBIS PETITION
An evidentiary hearing was held on petitioner's ineffective assistance of counsel claims on June 21, 1988. At the hearing, petitioner was represented by counsel and presented evidence. In addition, the parties conducted a deposition after the hearing, evidence of which this Court has considered. The Court, after hearing the testimony and observing the demeanor of the witnesses, makes the findings of fact and conclusions of law set out below:
 Trial Counsel
Douglas Hendrix and Michael Stilson were appointed to represent petitioner on January 4, 1982. Hendrix was licensed to practice law in this state in 1950 and Stilson in 1974. By 1982 Hendrix's practice was fifty percent criminal defense work while Stilson's practice was about twenty percent criminal defense work. Both attorneys had defended clients charged with murder prior to petitioner's trial, but petitioner's case was their first case under the existing death penalty statute. Both Hendrix and Stilson had conducted numerous felony jury trials before representing petitioner. Hendrix was at the time of petitioner's trial an experienced and capable criminal defense attorney.
In preparation for petitioner's trial, Hendrix and Stilson reviewed the transcripts of petitioner's 1977 trial as well as petitioner's 1957 murder trial. Trial counsel examined the trial exhibits and the public defender's files from the 1977 trial. Prior to petitioner's trial, trial counsel talked with one of petitioner's previous attorneys, Joel Sogol, and contacted the Southern Poverty Law Center for information concerning death penalty cases.
Stilson and Hendrix met with petitioner more than ten times prior to trial, both at the jail and in the courthouse. These meetings would on occasion last an hour or two. Petitioner provided trial counsel with names of witnesses and trial counsel followed-up on this information. Trial counsel filed a motion for funds to hire an investigator to locate witnesses. (R. 1588)* *Page 902 
This motion was granted on February 22, 1982. (R.1590) The investigator located the witnesses and Stilson testified that he interviewed a dozen or more of these witnesses including some that were not subpoenaed to trial. Stilson and Hendrix divided the labor prior to trial, and it was Stilson who interviewed the witnesses prior to trial. Stilson also interviewed some of the prosecution witnesses in preparation for trial and Hendrix testified that he knew some of the prosecution witnesses due to prior cases, and since he had a transcript of the first trial he knew what the prosecution witnesses' testimony would say at trial.
Trial counsel filed numerous pre-trial motions including motions to suppress evidence seized and petitioner's statement, a motion to strike all allegations concerning petitioner's 1957 conviction, a motion to quash the indictment, a motion for individual voir dire and sequestration of prospective jurors, a motion challengingWitherspoon questions, and motion to compel disclosure by the prosecution. In addition, trial counsel argued petitioner's prose motion for a change of venue.
Stilson conducted legal research in excess of fifty hours in preparation for petitioner's trial.
Failure To Request State-Funded Experts to Determine Whether Petitioner Was Suffering From a Mental Disease or Defect at the Time of the Offense
In paragraph 1a of his petition, petitioner alleged that his trial counsel were ineffective in failing to request state-funded experts to determine whether petitioner was suffering from a mental disease or defect at the time of the offense. In support of this claim, petitioner presented the testimony of trial counsel, reports from Bryce Hospital, and the reports of the Lunacy Commission that examined petitioner in 1977. Respondent relied upon the testimony of trial counsel, the record and the Bryce reports.
The Lunacy Commission report, issued June 6, 1977, found that petitioner was not suffering from a mental disease or defect that would have affected his criminal responsibility at the time of the offense. Trial counsel were aware of the Lunacy Commission report prior to trial.
Petitioner informed both his attorneys that he would not allow them to enter an insanity plea at the 1982 trial. The theory of the defense was that the victim had committed suicide. Trial counsel felt that it would be inconsistent to attempt to show petitioner was suffering from a mental disease or defect when he denied any participation in the murder. Hendrix thought that the two theories conflicted and that if petitioner was not involved in the victim's murder, then his mental condition was irrelevant and would have been a foolish tactic to utilize.
Hendrix, based on his conversations with petitioner, had no reason to think petitioner was incompetent as petitioner never indicated any type of mental problem. Petitioner assisted trial counsel and was active in the defense of his case. Based on the evidence, including petitioner's statement, the suicide defense was the best available defense theory to pursue in petitioner's case. Hendrix testified that "no one would buy" an insanity defense in petitioner's case, based on the evidence.
Trial counsel's decision not to pursue an insanity defense was based on sound strategic considerations. Trial counsel were faced with petitioner's demand not to raise insanity, and the fact that a suicide defense and an insanity defense would have conflicted. In fact, Stilson was not certain whether psychological reports diagnosing petitioner as an alcoholic would have helped petitioner's case. Even if these psychological reports, contained in petitioner's exhibit 2, had been admitted at trial, any advantage gained by the diagnosis of alcoholism would have been more than offset by the Lunacy Commission report which stated petitioner was not suffering from any mental disease or defect that would *Page 903 
have affected his criminal responsibility at the time of the offense.
Petitioner has also failed to meet his burden of establishing that he was prejudiced by trial counsel not requesting expert assistance in this area. No evidence has been presented to show that if trial counsel had, over petitioner's stated objections, raised some form of insanity defense, the jury would have convicted petitioner or recommended a death sentence.
 Failure to Investigate and Pursue A Defense of Insanity
In paragraph 1f of his petitioner, petitioner alleged that his trial counsel were ineffective in failing to investigate and pursue a defense of insanity, or mental disease or defect or diminished mental capacity, even though petitioner was exhibiting behavior that should have led trial counsel to investigate and pursue such defenses. The trial counsel were not ineffective for failing to investigate and pursue an insanity defense as shown by the facts and conclusions of law stated above.
Failure to Properly Investigate and Present Available Evidence in Support of Petitioner's Intoxication Claim
In paragraph 1e of his petition, petitioner alleged that his trial counsel were ineffective in failing to properly investigate and present available corroborating evidence in support of petitioner's claim of intoxication at the time of the offense. At trial and at the suppression hearing, the defense attempted to suppress petitioner's statement because petitioner had been drinking. Hendrix utilized Officer Marcum's testimony to demonstrate petitioner's condition at the time he made the statement. At the jury trial, Hendrix tried to convey the effect that alcohol would have had upon petitioner. In addition, in closing argument, Hendrix attempted to create some sympathy toward petitioner based upon the circumstances surrounding his statement. Hendrix had no other available corroborating evidence of intoxication to utilize in behalf of petitioner's case.
There was ample evidence at trial, if believed, to show that petitioner had been drinking the day of the murder and the preceding evening. Trial counsel were not deficient because they did not present scientific or some other form of testimony regarding petitioner's claim of intoxication. Marcum's testimony showed that petitioner was given whiskey after making his statement, but prior to signing the written copy of the statement. Other witnesses testified to smelling alcohol on petitioner's breath the day of the murder. This evidence was presented at the suppression hearing in 1977 and rejected. It was rejected on petitioner's first appeal. It was presented at petitioner's 1982 suppression hearing and rejected. It was presented at both of petitioner's trials and rejected and it was rejected on the direct appeal of petitioner's second conviction.
As to this point, petitioner has failed to overcome the strong presumption that trial counsel rendered effective assistance and used reasonable professional judgment. In addition, petitioner has failed to meet his burden of proving that there was a reasonable probability that, but for trial counsel's failures, the outcome of petitioner's suppression hearing or trial would have been different. Trial counsel were not ineffective.
Failure to Request State Funds For Experts to Challenge the Prosecution's Physical Evidence and to Assist the Defense
In paragraph 1b of his petitioner, petitioner alleged that trial counsel were ineffective in failing to request that assistance of state-funded experts to challenge the state's physical evidence and to assist the defense, and in failing to request the assistance of such experts to rebut the testimony of the state's expert witnesses. Trial counsel sought the appointment of an investigator to locate witnesses to testify on behalf of petitioner. The trial court granted the motion and an investigator did locate these witnesses. At the Rule 20 *Page 904 
hearing, Hendrix was not aware of any witnesses who could have been called to rebut the testimony of the state's expert witnesses. Given the evidence in the case, Hendrix was of the opinion that other expert witnesses would not have assisted the defense. At trial, Stilson was able to utilize expert testimony from the toxicologist and pathologist who were called by the prosecution. Stilson did not believe that the statute allowed for state-funded expert witnesses at the time of petitioner's trial.
Trial counsel were not deficient for failing to request state-funded expert witnesses. Trial counsel were able to use expert testimony concerning the physical evidence from Dr. Santina and Jim Britton.
This court notes that Stilson testified that he would have made a motion for expert witnesses if state funds had been available at the time of trial.
Further, petitioner has failed to introduce or proffer any evidence that trial counsel could have presented in 1982 concerning the physical evidence in the case. Petitioner failed to meet his burden of proving that there was a reasonable probability that, but for trial counsel's actions, the outcome of petitioner's trial would have been different.
Failure to Request State Funds For An Investigator to Interview Witnesses
In paragraph 1c of his petition, petitioner alleged that trial counsel was ineffective in failing to request the assistance of a state-funded investigator to interview the state's witnesses, witnesses who might have testified on petitioner's behalf and otherwise to assist in the defense.
Attorney Hendrix testifies that he did not interview the state's witnesses because he had their testimony in the transcript from the 1977 trial. Stilson interviewed potential defense and state witnesses. The defense's investigator, Eddie Smelley, located potential defense witnesses who were then interviewed by Stilson.
This court finds that trial counsel effectively utilized the services of a state-funded investigator to locate potential defense witnesses. Petitioner presented no evidence to establish that if trial counsel had requested state funds for an investigator to interview the prosecution witnesses, this investigator would have gathered information in addition to what trial counsel had at their disposal.
Trial counsel's performance was not deficient as to this claim. In addition, petitioner has failed to meet his burden of proving that there was a reasonable probability that, but for trial counsel's failure to request a state-funded investigator, the outcome of petitioner's trial would have been different.
 Failure to Pursue Available Lines of Defense
In paragraph 1d of his petition, petitioner alleged that trial counsel were ineffective in failing to pursue other possible defenses, i.e., that the murder may have been committed by another person or that the victim had committed suicide. Petitioner told trial counsel that Eugene Schultz was the person who killed Lillian Montgomery and that Shultz told petitioner not to tell anyone. Petitioner told his lawyers that he wanted to call Schultz as a witness to get him to admit he killed Montgomery, but Hendrix felt that such a tactic would have been inconsistent with petitioner's three prior statements that Montgomery's death was a suicide. Hendrix felt that the prosecution would have had a field day with the Shultz theory had it been presented at trial without any evidence to support it except petitioner's testimony. Hendrix thought that the defense theory utilized at trial, that the victim committed suicide, was the best available defense.
Petitioner failed to establish that trial counsel had any available evidence, other than the possible testimony of petitioner, that Schultz killed Lillian Montgomery. In light of the evidence, trial counsel made a sound strategic decision, with petitioner's assent, not to proceed with this claim. Trial counsel's performance was not deficient and petitioner has failed to demonstrate *Page 905 
that the outcome of this trial would have been different had this claim been raised.
As to the allegation that trial counsel failed to pursue the possible defense that the victim committed suicide, this was the theory of defense utilized at trial. Petitioner's current counsel did not present any evidence concerning the suicide theory that trial counsel did not either have available or attempt to introduce as evidence at petitioner's trial.
There is no merit to petitioner's claim as stated. Certainly trial counsel's performance was not deficient where they used a defense which they are now alleged not to have used. Such an allegation does not show that trial counsel rendered ineffective assistance of counsel.
Failure to Call Dr. Albert Tatum As A Witness and Failure to Call An Expert Witness to Testify As To Lillian Montgomery's Recurring Alcoholism
In paragraph 1j of his petition, petitioner alleged that trial counsel were ineffective in failing to call Dr. Tatum as a witness to testify with respect to Lillian Montgomery's allegedly recurrent history of alcoholism and admissions to the hospital. In paragraph 1k of his petition, petitioner alleged that trial counsel were ineffective for failing to call an expert witness who could have testified as to Lillian Montgomery's allegedly recurring alcoholism and admissions to the hospital.
Trial counsel testified that Dr. Albert Tatum died in 1980. Petitioner's capital murder trial was in 1982. Trial counsel's performance cannot be deficient for not calling a dead witness to testify at petitioner's trial.
Hendrix attempted to have Lillian Montgomery's hospital records admitted into evidence at trial, but the trial court would only allow the most recent admission prior to her death into evidence. Hendrix also testified that the defense had to be very careful about attacking the victim's reputation. In Hendrix's opinion such a tactic could have backfired on petitioner.
At trial, the defense was successful in getting evidence to the jury that Lillian Montgomery had been drinking. Hendrix noted that the hospital records which were admitted into evidence detailed the victim's condition shortly before her death. Petitioner's trial counsel successfully presented evidence of the victim's drinking.
Petitioner once again has not come forward with any expert testimony that could have been utilized by trial counsel had they decided to put this additional evidence before the jury. This court will not consider trial counsel's performance deficient when petitioner has failed to represent to the Court any evidence that trial counsel failed to present.
Petitioner has failed to overcome the strong presumption that trial counsel rendered effective assistance and used reasonable professional judgment as to this issue. In addition, petitioner has failed to meet his burden of proving that there was a reasonable probability that, but for trial counsel's alleged failures, the outcome of petitioner's trial would have been different.
Failure to Take the Necessary Steps That Would Have Permitted the Admission Into Evidence of Lillian Montgomery's Record of Hospital Admissions Prior to January 5, 1977
In paragraph 1m of his petition, petitioner alleged that trial counsel were ineffective in failing to take the steps necessary for the admission into evidence of Lillian Montgomery's record of hospital admissions prior to January 5, 1977. Petitioner's trial counsel attempted to introduce all of Lillian Montgomery's hospital records, but the trial court only allowed records of her most recent admission into evidence. The trial record indicates that the hospital records were not ruled inadmissable on predicate grounds, but were not relevant. (R. 1840)
Trial counsel acted properly in attempting to introduce these records, and the hospital records were not ruled inadmissible because of any deficiency in preparation. Petitioner has not demonstrated how trial counsel could have convinced the trial *Page 906 
court that these records were relevant and should have been admitted. Petitioner has failed to overcome the strong presumption that trial counsel rendered effective assistance.
Additionally, petitioner has failed to meet his burden of proving that there was a reasonable probability that, but for trial counsel's failure, the outcome of petitioner's trial would have been different. Trial counsel questioned the state's expert witness about the effect of dehydration on a person. (R. 1842) Trial counsel made an offer-of-proof for the hospital records not admitted into evidence. Petitioner has shown no factual basis for his contentions on this issue.
Failure to Bring to the Jury's Attention That the January 5, 1977 Hospital Admission Listed the Victim as Lillian Hubbard
In paragraph 1n of his petition, petitioner alleged that trial counsel were ineffective in failing to bring to the jury's attention the fact that in the victim's hospital admission on January 5, 1977, she was listed as "Lillian Hubbard," that is to say, petitioner's wife. Petitioner presented no evidence in support of this claim.
The January 5, 1977, hospitalization records were admitted into evidence and the jury was able to see this particular reference. Witnesses testified that petitioner and the victim were living together as husband and wife. (R. 2303) This relationship was brought before the jury in both testimony and argument as it tended to show that petitioner had no motive to kill the victim. Stilson recalled arguing to the jury the fact that the hospital records listed the victim's name as Lillian Hubbard.
Trial counsel clearly brought to the jury's attention the fact that petitioner and the victim were living together as husband and wife. Trial counsel's performance therefore was not deficient. Petitioner has failed to meet his burden of proving that he was prejudiced by trial counsel's action on this point.
 Failure To Object to Remarks Made By The Prosecution During Closing Argument
In paragraphs 1p and 1h of his petition, petitioner alleged that trial counsel were ineffective in failing to object to remarks made by the prosecution during closing argument at the sentencing phase before the jury. In support of this allegation, petitioner relied upon the testimony of trial counsel and the record.
Hendrix testified that his general approach to closing argument was to not "jump up and down" objecting to the prosecution's closing. Hendrix felt that constant interruptions annoy juries and that his courtesy casts the prosecution in an unfavorable light when the state objected to his closing remarks. Hendrix saves his objections for important or prejudicial remarks by the prosecution. This approach to closing argument is based on Hendrix's years of arguing cases before juries.
Stilson feels that the prosecution's argument in this case was not very effective. In Stilson's opinion, the prosecutor was not very good at closing argument. According to Stilson, there are times a defense attorney does not want to make objections to certain points because it's simply not good argument. Stilson felt that in these instances an objection would only have informed the jury that the defense did not like what the prosecution was saying.
Trial counsel had sound strategic grounds for not objecting to the cited remarks made by the prosecution during closing argument. The decision was based on trial counsel's experience and their opinion that the prosecution argument was not persuasive. Petitioner has failed to meet his burden of establishing that his trial counsel were constitutionally deficient in their performance. Petitioner has failed to overcome the strong presumption that trial counsel rendered effective assistance and used reasonable professional judgment on this issue. Additionally, petitioner has failed to meet his burden of proving that there was a reasonable probability that, but for trial counsel's failures, the outcome *Page 907 
of petitioner's trial would have been different.
Failure to Offer Evidence Or Expert Testimony as to the Effect Of Marcum Giving Petitioner Alcohol Prior to His signing His Statement
In paragraph 1q of his petition, petitioner alleged that his trial counsel were ineffective in failing to offer evidence or expert testimony as to the effect on petitioner of Officer Marcum giving petitioner alcohol just prior to the time that petitioner signed his statement. This issue was brought out in the testimony of Officer Marcum, who testified that petitioner said he needed a drink to steady his nerves before signing his statement. Hendrix argued to the jury in closing that petitioner was intoxicated at the time petitioner gave his statement to Marcum. (R. 2398-2399) In Hendrix's opinion anyone old enough to be on a jury who heard this testimony would have understood petitioner was intoxicated. Hendrix thought that there was no need for any further evidence on this point. Hendrix thought that this evidence helped petitioner's cause and that other expert testimony might have hurt petitioner's case on this point if it established that the amount of alcohol was not sufficient to intoxicate petitioner.
Stilson was not sure that psychiatric reports from Bryce Hospital would have helped demonstrate that petitioner was intoxicated at the time petitioner made his statement to Marcum. Stilson argued to the jury in closing that petitioner was intoxicated at the time he was questioned by police. (R. 2379-2381)
The Court of Criminal Appeals found that petitioner's statement was properly admitted into evidence notwithstanding the effect the alcohol had on the petitioner. The appellate court specifically found that the statement had been completed before petitioner imbibed any alcohol and only petitioner's signature was obtained after the drink.Hubbard v. State, 500 So.2d 1204, 1220 (Ala.Crim.App. 1986). Given this determination by the appellate court, trial counsel's performance was not deficient and certainly no prejudice can attach to trial counsel's actions.
Even if, against their own judgment, trial counsel had sought to introduce expert testimony concerning the effect on petitioner of Marcum's giving him alcohol prior to petitioner signing his statement, this would not have changed the outcome of petitioner's trial. The trial judge ruled that petitioner's statement was complete prior to his taking the drink and the appellate court specifically affirmed on this point. Petitioner has failed to meet his burden of proving that but for trial counsel's failure, the outcome of petitioner's trial would have been different.
Trial Counsel Stated in the Presence Of Potential Jurors That Petitioner's Trial "Shouldn't Be Much Longer Than Last Time,; Thereby Informing The Jury of Petitioner's Prior Trial
In paragraph 1r of his petition, petitioner alleged that his trial counsel were ineffective for stating in the presence of potential jurors that petitioner's trial "shouldn't be much longer than the last time," thereby informing the jury of petitioner's prior trial.
The record shows that during voir dire of the venire, the trial judge excused the venire members and asked certain potential jurors to remain for further examination. (R. 1661) It was the practice in 1982 to send the venire out of the courtroom and . . . individual members were called back inside. Individual members were brought up to the bench outside the hearing of the rest of the venire. The record indicates the trial court outlined the procedure to question venire members outside the hearing of others. (R. 1543) The record clearly indicates that the trial judge asked everyone else to wait outside the courtroom while they were called in one at a time. (R. 1662)
Potential juror Lyda was asked to come in the courtroom, (R. 1666), and she stated that she would have a hardship in serving on a sequestered jury through the trial week. The trial judge asked how long the case would run and Stilson replied, "I think *Page 908 
it shouldn't be much longer than the last time." (R. 1668) Potential juror Lyda was then excused from service by agreement of the defense and prosecution. After the challenges for cause were heard, a jury was selected for petitioner's trial. (R. 1669)
Based on the record, and Stilson's testimony, Stilson's reply to the trial judge was not heard by the jury which sat on petitioner's trial. As such, trial counsel's performance was certainly not deficient nor has petitioner established that he was prejudiced in any manner on this point.
Trial and Appellate Counsel Failed To Direct the Courts To Longstanding Precedents Which Clearly Support Petitioner's Claims for Inclusion of Evidence
In paragraph 1s of his petition, petitioner alleged that his trial and appellate counsel failed to be aware of and direct the courts to longstanding precedents which clearly support petitioner's claim for inclusion or exclusion of evidence. In support of this claim petitioner presented no evidence.
This broadly stated claim was presented to this Court without any specific statement of the grounds for which relief is sought or any disclosure of the factual basis of these grounds. A bare allegation that constitutional rights have been violated is not sufficient. Accordingly, pursuant to Rule 20.6(b), this claim is dismissed.
Appellate Counsel Failed to Request A Supplemental Trial Transcript When The Transcript Upon Which Petitioner's Appeal is Based is Missing Several Key Pages
In paragraph 1t of his petition, petitioner alleged that his appellate counsel was ineffective in failing to request a supplemental trial transcript, because the trial transcript was missing several pages. In support of this claim petitioner presented no evidence.
Appellate counsel was not ineffective. Petitioner has failed to demonstrate that he was prejudiced in any manner by appellate counsel's actions. Petitioner failed to present any evidence which indicated that any issue on appeal was adversely decided because of an incomplete or inaccurate appellate record.
 Trial Counsel Failed To Move For A Change of Venue
In paragraph 1u of his petition, petitioner alleged that trial counsel was ineffective in failing to move for a change of venue. In support of this claim petitioner presented no evidence.
The record indicates that petitioner filed a pro se motion for change of venue prior to appointment of trial counsel which was properly denied. (R. 1531-1532) Trial counsel were certainly not required to file a motion after petitioner had already done so. Petitioner has failed to meet his burden of establishing that trial counsel were deficient in their performance. Additionally, petitioner has failed to demonstrate that he was prejudiced by trial counsel's failure as to this point.
Trial and Appellate Counsel Failed To Object to Evidence On the Ground That The Police Illegally Tampered With Evidence by Giving Petitioner Alcohol From a Bottle Seized as Evidence
In paragraph 32b of the amendment to his petition, petitioner alleged that trial and appellate counsel failed to object to the inclusion of evidence or otherwise raise the issue that petitioner was denied his rights to due process and a fair trial on the ground that the police illegally tampered with evidence in the case by giving alcohol to petitioner from a bottle that had been seized as evidence at the scene of the crime. Hendrix testified that the defense used the evidence allegedly "tampered with" to petitioner's advantage. The fact that they could establish that petitioner was given whiskey at the time he made his statement was one of the best points in petitioner's case. Had he objected and *Page 909 
kept the bottle out of evidence, it would have deprived petitioner of the opportunity to show the jury how much had been drunk. Stilson felt it was important to show the jury the bottle and it was to petitioner's advantage to show the jury how much petitioner had to drink.
Trial and appellate counsel made a strategic decision to allow the inclusion of the evidence alleged to have been "tampered with" at trial. Their reasoning was well-founded and demonstrated good professional judgment. Additionally, petitioner has failed to meet his burden of demonstrating that he was prejudiced by trial and appellate counsel's failure to object to this evidence.
Trial and Appellate Counsel Failed to Claim That the Prosecution Suppressed Evidence Favorable to the Defense By Failing To Take an Intoximeter Test of Petitioner At His Arrest and At the Time He Gave His Statement To the Police
In paragraph 32c of his amendment to his petition, petitioner alleged that trial and appellate counsel were ineffective in failing to claim that petitioner was denied his rights to due process and a fair trial because the prosecution suppressed evidence favorable to the defense, or which would have been admissible in mitigation of punishment, by failing to take an intoximeter test or other test designed to demonstrate the percentage of alcohol in petitioner's blood at the time of his arrest and at the time of taking petitioner's statement. Petitioner's trial counsel was able to utilize the fact the petitioner was not tested during cross-examination of prosecution witnesses and closing argument to their advantage. Hendrix felt it was better that no intoximeter test had been administered, because a test might have shown that petitioner was not in fact intoxicated and petitioner would have lost this tactical point to argue. Stilson noted that there was no statutory authority to require the State to take an intoximeter test of petitioner.
There was no evidence presented that the prosecution [suppressed] any evidence favorable to the defense or which would have been admissible as mitigation. The State was not required to administer any form of test to establish the percentage of alcohol in petitioner's blood. Trial counsel would not have had any ground for such an objection nor would appellate counsel have had grounds to raise this issue on appeal. Trial counsel were not obliged to object without regard to the merits of the objection. Palmes v. Wainwright, 724 [725] F.2d 1511, 1523 (11th Cir. 1974). Appellate counsel is not obliged to raise issues reasonably considered to be without merit. Francois v. Wainwright, 741 F.2d 1275, 1285 (11th Cir. 1984).
Trial counsel's performance was not deficient and petitioner has failed to demonstrate that he was prejudiced by trial or appellate counsel's failure to object or raise this issue on appeal.
Appellate Counsel Failed to Raise Claims Concerning Denial and/or Restriction of Trial Counsel's Cross-Examination of Santina, the Hearsay Testimony of Montgomery, and the Exclusion of Hospital Records
In paragraphs 32d and 32e of his amendment to the petition, petitioner alleged that appellate counsel were ineffective in failing to claim that the trial court denied his right to confront his accusers and to present testimony favorable to the defense by, first, denying and/or restricting the cross-examination of Dr. Santina, second, because Jimmy Montgomery was permitted to testify to hearsay testimony as to the amount of money that his mother had spent on petitioner, and third, the exclusion of hospital records. The petition does not specify at what point in the trial proceedings petitioner's rights were abridged by restricting trial counsel's cross-examination of Santina. The trial record indicates that Stilson's cross-examination of Santina was met with an objection (R. 1833-1834), which was overruled. After another objection by the prosecution, Stilson was allowed to continued his cross-examination as to the analysis of the victim's *Page 910 
blood. (R. 1836) The prosecution then objected to the hospital records on the grounds of relevancy, and trial counsel were permitted to make an offer-of-proof outside the presence of the jury as to what they expected the hospital records to show. (R. 1836-1845) The trial court then took the issue under submission. (R. 1845) Subsequently, the trial court allowed into evidence defense exhibit number one, the January 5, 1977, hospitalization record, but would not allow the remaining records to be admitted based on the relevancy objection. (R. 2333-2334)
Appellate counsel listed the exclusion of the remaining hospital records with the summary of adverse rulings in the brief on appeal of this case. Appellate counsel is not obliged to raise issues reasonably considered to be without merit. Francois v. Wainwright, 741 F.2d 1275, 1285 (11th Cir. 1984). Petitioner has failed to overcome the strong presumption that appellate counsel rendered effective assistance and used reasonable professional judgment. Petitioner has not specified how the cross-examination of Santina was restricted and how appellate counsel could have presented this issue since the trial court acted properly on this point.
Additionally, petitioner has failed to meet his burden of proving that, but for appellate counsel's failures, the outcome of petitioner's appeal would have been different. Thus, petitioner was not denied effective assistance of appellate counsel as to these issues.
As to the allegation relating to Jimmy Montgomery, the record indicates that trial counsel made an objection to prosecution examination concerning how much money Lillian Montgomery had spent on petitioner. (R. 2302) The trial court ruled that the objection was not timely. (R. 2302)
This Court finds that appellate counsel's performance was not deficient for failing to raise this one issue on appeal. Additionally, petitioner has wholly failed to meet his burden of proving that but for appellate counsel's failure the outcome of petitioner's appeal would have been different. This Court finds appellate counsel was not ineffective as to this issue.
Trial and Appellate Counsel Failed to Claim That the Prosecutor Improperly Injected Into His Questions Statements of Fact That Were Without Basis in Evidence
In paragraph 32f of his amendment to the petition, petitioner alleged that trial and appellate counsel were ineffective in failing to claim that the prosecutor injected into his questions statements of facts that were without basis in evidence.
Petitioner's allegation was made without any supporting evidence or citations to instances in which the prosecution allegedly acted improperly. A bare allegation that constitutional rights have been violated is not sufficient for relief. Accordingly, pursuant to Rule 20.6(b), this claim is dismissed.
Petitioner raised as a separate issue the claim that the prosecutor injected into his questions incorrect facts. The question petitioner cites in that claim, was during cross-examination of a defense witness (R. 2329) and was permissible cross-examination. Trial and appellate counsel cannot be deemed ineffective for failing to object or raise issues related to proper examination of witnesses by the prosecution.
Appellate Counsel Failed To Claim That The Prosecution's Arguments at Sentencing Hearing Were Improper
In paragraph 32g of his amendment to the petition, petitioner alleged that appellate counsel was ineffective in failing to raise the issue of the prosecution's improper arguments at sentencing as specified in paragraph 1p of the petition.
As found previously, trial counsel were not ineffective for failing to object to this argument. Therefore appellate counsel was not ineffective for failing to raise this argument on appeal. Appellate counsel's performance was not deficient, nor has petitioner established that he was prejudiced *Page 911 
in any manner by appellate counsel's failure to raise this issue on appeal.
Trial and Appellate Counsel Failed to Claim That There was Insufficient Evidence to Permit A Finding of the Aggravating Circumstance That The Killing Was for Pecuniary Gain
In paragraph 32j of his amendment to the petition, petitioner alleged that trial and appellate counsel were ineffective in failing to claim that there was insufficient evidence to permit a finding of the aggravating circumstance that the killing was for pecuniary gain. At the evidentiary hearing, petitioner's current counsel stated that he had intended to allege that there was no motion for a directed verdict made as to this aggravating circumstance. Petitioner did not attempt to amend the pleadings to reflect any such intent.
Hendrix argued before the jury that pecuniary gain was not a motive for the killing, i.e., "why should petitioner kill the goose that laid the golden egg." Hendrix argued that Lillian Montgomery was supporting petitioner and he had no motive to kill her. The record indicates that Hendrix argued that there was not sufficient evidence to find this aggravating circumstance (R. 2448), and Stilson argued likewise at the punishment stage. (R. 2486) The Alabama Court of Criminal Appeals found: "The evidence strongly supports the conclusion that the present crime was committed for pecuniary gain." Hubbard v. State, 500 So.2d 1204, 1227
(Ala.Crim.App. 1986).
Trial and appellate counsel's performance was not deficient and petitioner has failed to overcome the presumption that counsel rendered effective assistance. Additionally, petitioner has failed to meet his burden of proving that but for trial and appellate counsel's failure to raise this issue, the outcome of petitioner's trial and appeal would have been different.
 Appellate Counsel Failed to Raise A Witherspoon Claim
In paragraph 32k of his amendment to the petition, petitioner alleged that appellate counsel were ineffective in failing to claim that petitioner was denied a jury of his peers because of the death qualification questions put to the jury panel.
This court finds that appellate counsel were not ineffective for not raising an issue without merit on appeal. The United States Supreme Court has upheld the "death qualification" of jurors. Lockhart v. McCree, 476 U.S. 162,106 S.Ct. 1758 [90 L.Ed.2d 137] (1986).
Trial and Appellate Counsel Failed to Claim That the Sentence Findings Were Not Supported By The Evidence
In paragraph 32l of his amendment to the petition, petitioner alleged that trial and appellate counsel were ineffective for failing to claim that the trial court's sentencing findings were not supported by the evidence.
Trial counsel filed a motion for new trial and stated that first, the verdict was "not sustained by the great preponderance of the evidence" and second, that the "verdict or decision is not sustained beyond a reasonable doubt." (R. 2571) The trial court overruled trial counsel's motion. (R. 2572 and 2578) Appellate counsel noted that the motion for new trial was overruled in the brief filed with the Court of Criminal Appeals.
This court finds that trial and appellate counsel were not ineffective in failing to raise this issue. The trial court's findings are based on the evidence at trial and petitioner has utterly failed to show any defect in those findings. Petitioner has not met his burden of proving that but for trial and appellate counsel's failure to raise this issue, the outcome of petitioner's trial would have been different.
Trial and Appellate Counsel Failed To Claim That the Prosecution Utilized an Aggravating Circumstance That Was Not Included in the Indictment
In paragraph 32m of his amendment to the petition, petitioner alleged that trial and appellate counsel were ineffective for failing to claim that petitioner was denied *Page 912 
his rights to due process, a fair trial and notice of the charges against him because the prosecution employed as an aggravating circumstance the theory that petitioner killed for pecuniary gain, an allegation that was not included in the indictment.
This court finds that in 1982, aggravating circumstance[s] did not have to be averred in the indictment in order to convict a defendant of a capital offense. Beech v. State,439 So.2d 1331 (Ala.Crim.App. 1983). A capital indictment need not aver the aggravating circumstances which are to be considered against a defendant in sentencing. Dobard v. State,435 So.2d 1338 (Ala.Crim.App. 1982). Consequently, any attempt by counsel to object at trial or raise . . . an issue on appeal would have been frivolous. Trial counsel were not obliged to object without regard to the merits of the objection. Appellate counsel is not obliged to raise issues reasonably considered to be without merit.
Trial and appellate counsel were not ineffective in failing to raise a meritless issue. Petitioner has failed to overcome the strong presumption that counsel rendered effective assistance and used reasonable professional judgment. Additionally, petitioner has failed to meet his burden of proving that, but for counsel's failures, the outcome of petitioner's trial and appeal would have been different.
Trial and Appellate Counsel Failed to Claim That the Trial Court Improperly Directed the Prosecution in Presenting The Case
In paragraph 32n of his amendment to the petition, petitioner alleged that trial and appellate counsel were ineffective in failing to claim that the trial court improperly directed the prosecution in presenting its case, in violation of petitioner's right to due process and a fair trial.
Hendrix testified that the trial court did not improperly direct the prosecution in presenting its case. Stilson also testified that the trial court did not improperly direct the prosecution in any manner in presenting its case against petitioner.
Petitioner has not cited any evidence that the trial court directed the prosecution in presenting its case. A review of the record fails to reveal that the trial court acted improperly in any manner in directing the prosecution. Petitioner has therefore failed to overcome the presumption that trial and appellate counsel rendered effective assistance and used professional judgment. Additionally, petitioner has failed to meet his burden [of] proving that, but for trial and appellate counsel's failure to raise this issue, the outcome of petitioner's trial and appeal would have been different.
Trial and Appellate Counsel Failed To Claim That the Death Penalty Constitutes Cruel and Unusual Punishment and was Illegally Imposed
In paragraph 32o of his amendment to the petition, petitioner alleged that trial and appellate counsel were ineffective for failing to raise the issue that the death penalty constitutes cruel and unusual punishment. The United States Supreme Court has already ruled that capital punishment is constitutional.E.g., Gregg v. Georgia, 428 U.S. 153 [96 S.Ct. 2909,49 L.Ed.2d 859] (1976); Proffitt v. Florida, 428 U.S. 242
[96 S.Ct. 2960, 49 L.Ed.2d 913] (1976). Petitioner's trial counsel and appellate counsel were therefore not ineffective for failing to raise that issue.
 Trial Counsel Failed to Present Evidence At the Sentencing Hearing Before the Jury
In paragraph 1o of the petition, petitioner alleged that trial counsel was ineffective in failing to present any evidence at the sentencing hearing before the jury.
Trial counsel considered calling petitioner and other witnesses to testify at sentencing before the jury. Petitioner had only been out of prison for a few months and had been living with the victim. Thus, the local people petitioner knew who could have been called to testify, were friends of the victim. No witnesses came forward to testify *Page 913 
on behalf of petitioner. Hendrix also testified that the prosecution had witnesses that could have been called to testify on behalf of petitioner. Hendrix also testified that the prosecution had witnesses that could have been called to testify in rebuttal to any defense witnesses at sentencing. Stilson testified that trial counsel discussed calling witnesses, but did not call anyone. Petitioner did not provide trial counsel with the names of any witnesses who could testify at sentencing before the jury. No member of petitioner's family even attended the trial.
Petitioner's current counsel has not shown what evidence . . . he alleges trial counsel should have presented at the sentencing hearing before the jury. The Court finds that trial counsel's performance was not deficient for failing to present evidence in mitigation at the sentencing hearing.
Trial and Appellate Counsel Failed To Claim That Jury Instructions at the Guilt and Sentencing Phase of Petitioner's Trial Were Improper
In paragraphs 1, 32h and 32i of the petition and amendment to the petition, petitioner alleged that his trial and appellate counsel were ineffective for failing to object at trial, and raise as an issue on appeal, errors in the jury instructions at both the guilt and sentencing stages of petitioner's trial. Petitioner specified five instances of allegedly improper conduct by the trial judge to which he claims his trial and appellate counsel should have objected.
First, petitioner alleged that his lawyers should have claimed that the trial judge's instruction in defining reasonable doubt, that it is an "actual and substantial doubt," was improper. Petitioner's trial and appellate counsel were not ineffective because the trial judge's instruction was a correct statement of law and, thus, not objectionable. E.g., Wright v. State, 148 Ala. 596, 602,42 So. 745 (1907); Hall v. State, 54 Ala. App. 198, 306 So.2d 290, 293
(1974), cert. denied, 293 Ala. 757, 306 So.2d 294 (1975).
Second, petitioner alleged that his trial and appellate counsel should have challenged the trial judge's instruction on malice (R. 2419) as having improperly shifted the burden of proof to the defense. Our Court of criminal appeals held in the case of Sims v. State, 386 So.2d 767:
 In prosecution for murder, trial court's jury instruction to the effect that every intentional and unlawful killing of a human being with a deadly weapon is presumed to be done with malice did not unconstitutionally shift burden of proving the element of malice to the defendant, in view of trial court's other instructions to the effect that defendant is presumed innocent and that burden of proof rests with prosecution to establish beyond [a] reasonable doubt every fact essential to conviction of defendant. [Quoting headnote 1.]
The charge in the above referenced case is substantially similar to the charge in the case at bar. In the present case, the trial judge also gave a charge as to the defendant's presumption of innocence and the State's burden of proof (R. 2415-2417, 2427). Therefore in accordance with the Sims case, any error in the charge was cured by the Court's charges on presumption of innocence and burden of proof.
Even if the trial judge's instruction was improper, given the evidence at trial, petitioner's counsel were not ineffective in not challenging this instruction. Malice is defined as the intent to take a human life without legal excuse, justification or mitigation. E.g., Sanders v. State, 382 [392] So.2d 1280, 1282 (Ala.Cr.App. 1980); Clark v. State,333 So.2d 885 (Ala.Cr.App.), cert. denied, 333 So.2d 890
(Ala. 1976). At trial, petitioner's defense was that he was not a participant in Lillian Montgomery's death and was not present when she was shot to death. While petitioner did not take the stand to establish this defense, it was detailed in his statement to the police and presented as his defense by his trial lawyers. Such an alibi defense essentially concedes the element of intent and, thus, malice. See, McClesky v. Kemp,753 F.2d 877, 904 (11th Cir. 1985) (en *Page 914 
banc), aff'd on other ground, 481 U.S. 279, 107 S.Ct. [1756] [95 L.Ed.2d 262] (1987). At petitioner's trial, whether Lillian Montgomery was killed intentionally without legal excuse, justification, or mitigation was not contested. The cited instruction had no bearing on the case and petitioner's counsel were not deficient in failing to object.
Further, petitioner was not prejudiced by this instruction because, based on the evidence at trial, any error in the trial judge's malice instruction was harmless. A burden shifting instruction is harmless where the evidence of guilt on the element covered by the instruction was overwhelming or the instruction concerned an element not at issue at trial.Williams v. Kemp, 846 F.2d 1276, 1283-84 (11th Cir. 1988), cert.denied, [___] U.S. [___,] 110 S.Ct. 1836 [108 L.Ed.2d 965] (1990); . . . Davis v. Kemp, 752 F.2d 1515, 1521 (11th Cir.) (en banc), cert. denied, 471 U.S. 1143 [105 S.Ct. 2689,86 L.Ed.2d 707] (1985). As noted above, petitioner's defense of alibi effectively conceded malice, the element covered by the cited instruction.
There was ample evidence that Lillian Montgomery was intentionally killed without legal excuse, justification, or mitigation, the element covered by the cited instruction. Lillian Montgomery was shot three times with a .38 caliber pistol. She was shot in the left shoulder, in the mouth and jaw, and in the head. The shot to her mouth shattered her jaw and severed her tongue. The last penetrated her skull and brain, causing her death. This evidence clearly establishes a strong case of killing with malice. Cf., Collins v. Francis,728 F.2d 1322, 1330-31 (11th Cir. 1984) (evidence overwhelming where victim killed by a blow to the head from a jack handle);Davis v. Kemp, supra, at 1521 (evidence overwhelming where victim was shot in the head with a .22 caliber pistol, had been tied with clothing, and jaw and bones in face had been fractured).
Thus, any deficiency in petitioner's lawyers' performance did not prejudice him because any error in the cited instruction was harmless. There is no reasonable probability that but for their failure to object to a harmless instruction, the outcome of petitioner's trial would have been different.
Third, petitioner alleged that his trial and appellate counsel failed to challenge the trial judge's comment on his failure to testify. Petitioner cites the following as a reference by the trial judge to his failure to testify:
 If one person intentionally shoots another with a gun or other deadly weapon and death ensues, the law implies or presumes malice. And imposes on the slayer the burden of rebutting this presumption
unless the evidence which proves the killing rebuts the presumption . . .
(R. 2419) (emphasis added) Petitioner asserts that the reference to "the slayer" having "the burden of rebutting the presumption" was a comment on petitioner's failure to testify.
Petitioner's contention is meritless for two reasons. First, petitioner's interpretation of the cited language is simply wrong. This passage cannot be construed as a comment on petitioner's decision not to testify and petitioner's lawyers were not ineffective in failing to raise a meritless objection.
Second, at the request of defense counsel, the trial judge gave the following instruction:
 The Court charges the jury that the fact that the defendant did not testify in this case cannot be considered in determining the defendant's guilt or innocence. No inference or conclusion can be drawn by the jury the [sic] facts the defendant was not sworn and put on the witness stand as a witness in his own behalf nor should this fact have any weight on the jury in reaching a verdict.
(R. 2435-36) The jury is presumed to have followed this instruction. E.g., Marshall v. Lonberger, 458 [459] U.S. 422 (103 S.Ct. 843, 74 L.Ed.2d 646] (1983); Ex parte Kennedy,472 So.2d 1106, 1110 (Ala. 1985); Adams v. Wainwright,764 F.2d 1356, 1369 (11th Cir. 1985), cert. denied, 474 U.S. 1073, [106 S.Ct. 834, 88 L.Ed.2d 805] (1986). Petitioner's *Page 915 
trial counsel were not ineffective where they obtained an instruction countering any improper inference that might have been drawn from petitioner's failure to testify.
Fourth, petitioner alleged that his lawyers at trial and on appeal failed to claim that when the trial judge instructed the jury that petitioner's 1957 murder was not evidence of his guilt in murdering Lillian Montgomery, the jury's verdict was improper because the 1957 murder was an element of the capital offense. At trial, the judge gave the following written instruction as requested by petitioner:
 The Court charges the jury that the fact that J.B. Hubbard has been convicted of murder in the second degree is not to be considered by the jury as to his guilt as charged in this case.
(R. 2436) A fair reading of this instruction reveals that the jury was simply told that in deciding whether Hubbard murdered Lillian Montgomery they were not to consider the fact that he had once before committed a murder. This instruction does not charge the jury that it could not consider Hubbard's 1957 murder conviction in deciding whether his murder of Lillian Montgomery was within twenty years of a previous murder. Petitioner's lawyers were not ineffective in failing to raise a meritless claim.
Fifth, petitioner alleged that his trial and appellate lawyers were ineffective in failing to challenge the trial judge's punishment stage instruction on the finding of the aggravating circumstance that petitioner had previously been convicted of a violent felony, the 1957 murder. In his punishment stage instructions, the trial judge instructed the jury that, by its verdict finding petitioner guilty of murdering Lillian Montgomery within twenty years of a previous murder, it had already found that the Code of Alabama
1975, S13-11-6(2) aggravating circumstance existed beyond a reasonable doubt. (R. 2451)
Petitioner's lawyers were not ineffective in failing to make this claim because the trial judge's instruction was manifestly correct. In finding petitioner guilty of the charged capital offense, the jury had necessarily found that he had been convicted for murder in 1957. Thus, the jury had in fact found beyond a reasonable doubt and to a moral certainty that petitioner had been "previously convicted of . . . a felony involving the use of threat of violence to the person," i.e., murder. Petitioner's counsel were not obliged to raise frivolous contentions or meritless objections.
Petitioner's contention that this instruction had the effect of mandating a death sentence overlooks the trial judge's instructions on mitigation (R. 2452-54), and weighing mitigation and aggravation in arriving at a sentence (R. 2452, 2454). The trial judge's instruction does not contain a suggestion that death is the presumed or mandated punishment simply because one aggravating circumstance has been shown to exist.
 Holding as to Ineffective Assistance of Claims
The Alabama Court of Criminal Appeals stated: "It is our opinion that appellant received a fair trial and was ably represented by experienced counsel throughout the proceedings." Hubbard v. State, 500 So.2d 1204, 1227
(Ala.Crim.App. 1986). Both Hendrix and Stilson put much more work into petitioner's trial than was specified on the fee sheet they submitted.
Petitioner has failed to meet the burden of establishing that his trial and appellate counsel were constitutionally deficient in their performance. Petitioner has merely shown that trial and appellate counsel did not do certain things that his current counsel would attempt. Petitioner has failed to overcome the strong presumption that trial and appellate counsel rendered effective assistance and utilized reasonable professional judgment.
Petitioner has also failed to meet his burden of proving that there was a reasonable probability that, but for trial and appellate counsel's failures, the outcome of petitioner's trial and appeal would have been different. Petitioner has shown this Court no factual basis for his contentions.
Petitioner has failed to prove that his trial and appellate counsel were ineffective. *Page 916 
The trial record and the evidence presented at the evidentiary hearing established instead that petitioner was represented by dedicated and able counsel who acted at all times in his behalf. Petitioner received the effective representation he was guaranteed by the Constitution. Petitioner's conviction and death sentence were not imposed because of any action or failure on the part of his counsel. Petitioner was convicted and sentenced to death because of the great weight of the prosecution's evidence.
 PROCEDURALLY BARRED CLAIMS
Petitioner raised twenty other claims in his petition and memorandum in support of the petition. This Court held, at the evidentiary hearing, that these claims were barred from consideration because petitioner failed to raise them at trial and on direct appeal or they were raised and rejected at trial and/or on direct appeal. A.R.Crim.P.Temp. Rule 20.2. These claims were:
 1. Police Conduct Claim — paragraphs 3 and II.
 2. Involuntary Statement Claim — paragraphs 4, 22, 23, 29 29, III.
3. Illegal Tampering Claim — paragraph 5.
4. Intoximeter Claim — paragraph 6.
 5. Cross-examination Restriction — paragraph 7.
6. Hearsay Testimony — paragraph 8.
 7. Improper Examination — paragraphs 9, 11, and X.
8. Hospital Records — paragraph 10.
 9. Improper Argument — paragraphs 11, 21, and X.
 10. Jury Instructions — paragraphs 12, 13, 14, 15, 16, 28, VII, and IX.
 11. Insufficient Evidence for Aggravating Circumstance — paragraph 17.
 12. Witherspoon claim — paragraph 18.
 13. Unsupported Sentence Finding — paragraph 19.
 14. Aggravating Circumstance — paragraph 20.
15. Unlawful Search — paragraphs 24 and IV.
 16. Prior Murder Conviction — paragraphs 25, and 26.
 17. 1957 Ineffective Assistance — paragraph 27.[1]
18. Mitigation Instruction — paragraph 27.
19. Improper Direction — paragraph 30.
 20. Cruel and Unusual Punishment — paragraph 31.
A petition for post-conviction relief shall not be based on any ground which was raised or addressed at trial or on direct appeal or which could have been but was not raised or addressed at trial or on direct appeal. A.R.Crim.P.Temp. Rule 20.2(a). Accordingly, each of these claims are procedurally barred from consideration in this proceeding.
 WAIVED ISSUES
At the evidentiary hearing, petitioner's current counsel waived and withdrew the following allegations of ineffective assistance of counsel: paragraphs 1a.(i), 1a.(ii), 1a.(iv), 1g., 11.,[2] 32a. and 32i. This Court therefore issues no ruling on these claims.[3]
 FINAL JUDGMENT
Based on the findings set out above, it is ORDERED, ADJUDGED, and DECREED that the Rule 20 petition be, and is hereby, denied.
Done this 17 day of October, 1988. *Page 917 
 /s/ Thomas S. Wilson CIRCUIT JUDGE
[1] We note that this is the second time the appellant was convicted of this offense. This court affirmed his first conviction in Hubbard v. State, 382 So.2d 577
(Ala.Crim.App. 1979). After affirming this court's decision in Hubbard v.State, 382 So.2d 597 (Ala. 1980), the Alabama Supreme Court subsequently reversed and remanded the case in Hubbard v.State, 405 So.2d 695 (Ala. 1981). Pursuant to that order, this court reversed and remanded the case in Hubbard v. State,405 So.2d 695 (Ala.Crim.App. 1981).
* "R." refers to pages in the transcript and record of petitioner's capital murder trial.
[1] We note that the claim of ineffective assistance of counsel in 1957 was raised in paragraph 26 of the Rule 20 petition. This claim, however, was still procedurally barred.
[2] We cannot locate in the record where this claim was specifically waived (see R. 84); however, it was procedurally barred. See "Procedurally Barred Claims" 7 and 9 in Trial Judge's Order (R. 585).
[3] The appellant also waived paragraph 11 (R. 90).